1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JORGE PALACIOS,                              No.  2:17-cv-2500 TLN CKD P

12                  Plaintiff,

13          v.                                    FINDINGS & RECOMMENDATIONS

14   KEVIN SMITH,

15                  Defendant.

16

17          Plaintiff is a state prisoner proceeding pro se with a civil action pursuant to 42 U.S.C. §

18   1983.  Currently before the court is defendants' motion for summary judgment.  ECF No. 59.

19   I.     Plaintiff's Allegations and Procedural History

20          In his complaint, plaintiff alleges three claims of deliberate indifference to serious medical

21   needs against defendant Smith.  (ECF No. 24 at 3-7.)  In Claim One, he asserts that on April 26,

22   2017, Smith confiscated his cane without any reason despite his clear need for it.  (Id. at 3.)

23   Plaintiff states that without his cane, he was unable to walk to the dining room and missed regular

24   meals from April 30, 2017 to July 14, 2017, which resulted in malnutrition.  (Id.)  Plaintiff states

25   that the confiscation of his cane also led to three falls and an inguinal hernia.  (Id.)  Plaintiff

26   further alleges that Smith confiscated plaintiff's mobility impaired vest, which allegedly led to the

27   condition of his hernia worsening, and other injuries.  (Id.)

28          In Claim Two, plaintiff alleges that on January 11, 2018, Smith denied plaintiff's requests

                                                  1

for the temporary use of a walker while he was waiting for surgery, as well as denied an order for alternative cuffing during transports.  (Id. at 4.)  Plaintiff alleges that because of the denial of alternative cuffing, he refused transport to an outside examination because the standard cuffing protocols caused too much pain.  (Id.)  Plaintiff alleges that his request for a walker was granted by another doctor.  (Id.)  Plaintiff states that because of Smith's denial, he could not safely conduct daily activities.  (Id.)  Moreover, plaintiff alleges that Smith failed to place an order for plaintiff's hernia surgery in an attempt to interfere with plaintiff's medical treatment and prolong his suffering.

In Claim Three, plaintiff alleges that on November 14, 2018, Smith confiscated all of plaintiff's medications, including his heart medications, in what he believes was retaliation for initiating this case.  (Id.)

In a screening order, the undersigned recommended that claims one and two proceed and claim three be dismissed because plaintiff did not exhaust his administrative remedies.  (ECF No. 25 at 6.)  The district judge adopted this finding, (ECF No. 41), and Smith answered the complaint on June 6, 2019 (ECF No. 39).  Smith filed the instant motion for summary judgment on January 17, 2020.  (ECF No. 59.)

II.     Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

2

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."

1    Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

2         "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

3    court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

4    v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is

5    the opposing party's obligation to produce a factual predicate from which the inference may be

6    drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

7    demonstrate a genuine issue, the opposing party "must do more than simply show that there is

8    some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

9    omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

10   non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

11   U.S. at 289).

12        Defendant simultaneously served plaintiff with notice of the requirements for opposing a

13   motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

14   summary judgment.  ECF No. 164-1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.

15   1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide

16   notice).

17        III.   Motion for Summary Judgment

18             A.  Defendant's Arguments

19        Defendant Smith argues that plaintiff's allegations amount to nothing more than a

20   difference of opinion regarding medical care.  (ECF No. 59-1 at 6.)  Specifically, Smith argues

21   that deliberate indifference is a high legal standard, and that plaintiff has not made the requisite

22   showing.  (Id. at 18-19.)  Smith further argues that decisions regarding plaintiff's access to his

23   cane and mobility vest were similarly merely differences in medical opinion.  (Id. at 19-21.)

24   Moreover, Smith states that decisions regarding a walker and alternative handcuffs were not

25   deliberately indifferent to plaintiff's needs.  (Id. at 21-23.)  Defendant also argues that Smith did

26   not cause any delays in plaintiff's hernia surgery, and furthermore, any argument that he failed to

27   place an order for surgery was not fully exhausted.  (Id. at 23-28.)  Finally, Smith argues he is

28   entitled to qualified immunity.  (Id. at 28.)

1        B.   Plaintiff's Response

2            At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil

3    Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed

4    must support the assertion by . . . citing to particular parts of materials in the record."  It is well-

5    established that the pleadings of pro se litigants are held to "less stringent standards than formal

6    pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).

7    Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other

8    litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on

9    other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

10   However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary"

11   and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as

12   "limited access to legal materials" as well as "sources of proof."  Jacobsen v. Filler, 790 F.2d

13   1362, 1364-65 & n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation

14   marks omitted).  Inmate litigants, therefore, should not be held to a standard of "strict literalness"

15   with respect to the requirements of the summary judgment rule.  Id. at 1364 n.4 (citation omitted).

16           The court is mindful of the Ninth Circuit's more overarching caution in this context, as

17   noted above, that district courts are to "construe liberally motion papers and pleadings filed by

18   pro se inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder,

19   611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, as plaintiff has largely complied with the

20   rules of procedure, the court will consider the record before it in its entirety.  However, only those

21   assertions in the opposition which have evidentiary support in the record will be considered.

22           Here, plaintiff argues that Smith was deliberately indifferent to his medical needs and that

23   his grievances were fully exhausted.  (See ECF No. 66.)

24   IV.    Facts

25           The court views the facts and draws inferences in the manner most favorable to plaintiff as

26   the non-moving party.  Unless otherwise noted, the following facts are expressly undisputed by

27   the parties or the court has determined them to be undisputed based on thorough review of the

28

5

1    record.[1]  These facts are taken from the Defendant's Statement of Undisputed Facts (DSUF),

2    (ECF No. 59-2), Plaintiff's Opposition to Motion for Summary Judgment, (ECF No. 66), and

3    Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, (ECF

4    No. 69).

5          On June 22, 2016, plaintiff was transferred from Valley State Prison (VSP) to Mule Creek

6    State Prison (MCSP).  (DSUF ¶ 5.)  At all relevant times, plaintiff was in the custody of

7    California Department of Corrections (CDCR), at MCSP.  (Id. ¶ 1.)  Defendant Smith was

8    employed by CDCR as a physician at MCSP and was assigned as plaintiff's primary care

9    physician (PCP).  (Id. ¶¶ 2-3.)  Prior to Smith, plaintiff's PCP was Dr. Horowitz.  (Id. ¶ 6.)

10   Plaintiff has several specialized health issues that required numerous care providers and

11   specialists.  (Id. ¶ 7.)

12         A.  Access to a Cane and/or Mobility Vest

13         On August 17, 2015, while housed at VSP, plaintiff was issued a cane.  (Id. ¶ 8.)  During a

14   subsequent medical visit on August 3, 2016, while at MCSP, Dr. Horowitz determined that

15   plaintiff was able to ambulate satisfactorily without an assistive device and ordered a change in

16   plaintiff's disability status to reflect that plaintiff did not have a disability.  (Id. ¶¶ 12-13.)

17         The Disability Placement Program Verification (DPPV) form (CDCR 1845), when

18   completed, indicates an inmate's disability level.  (Id. ¶ 14.)  If deemed necessary, an assistive

19   device can be prescribed to address an inmate's ambulation needs.  (Id.)  On August 3, 2016, Dr.

20   Horowitz issued and signed a CDCR 1845 form reflecting Dr. Horowitz's determination that

21   plaintiff was not disabled.  (Id. ¶ 15.)

22         On August 9, 2016, the Reasonable Accommodation Panel considered plaintiff's request

23   for a cane and mobility vest, and ultimately denied plaintiff's request on the basis that plaintiff

24   could sufficiently ambulate without any durable devices.  (Id. ¶ 18.)  Plaintiff's mobility vest was

25   accordingly discontinued.  (Id. ¶ 20.)  On September 29, 2019, Smith met with plaintiff regarding

26

27   _____

[1] Plaintiff, in his opposition, disputed a significant portion of the facts submitted by Smith, but
provided only broad conclusory statements without evidentiary support to the contrary.  (See ECF
No. 66.)  Accordingly, the court will deem the vast majority of Smith's statement of undisputed
28   facts as undisputed.

1    an appeal plaintiff filed in which plaintiff stated that he disagreed with the decision to deny his

2    request for a mobility vest.  (Id. ¶ 21.)  Smith took note of plaintiff's medical history, as well as

3    the fact that he previously had a mobility vest at VSP, and that it was discontinued at MCSP.

4    (Id.)  During the visit, Smith also noted that plaintiff had a cane, despite the prior finding that he

5    did not have a medical need for the cane.  (Id. ¶ 22.)  Smith, following a musculoskeletal exam,

6    determined that without the cane, plaintiff's gait was steady, and that there was no need for a

7    mobility vest.  (Id. ¶¶ 24-25.)

8           On April 7, 2017, Dr. Vaughn issued an order discontinuing plaintiff's cane and mobility

9    vest, reflecting a determination that plaintiff did not have a disability.  (Id. ¶ 26.)  Following a

10   request for a cane and mobility vest, Smith again met with plaintiff, conducted musculoskeletal

11   exam, and concluded that plaintiff could ambulate without an assistive device and therefore

12   neither a cane nor mobility vest were medically necessary.  (Id. ¶¶ 27-31.)  Because Dr. Vaughn

13   had previously issued an order discontinuing plaintiff's cane and mobility vest, Smith did not

14   issue an order or take any action in response to plaintiff's requests for a cane and mobility vest.

15   (Id. ¶ 32.)

16          On May 17, 2017, plaintiff informed CDCR staff, for the first time, that he was having

17   difficulty obtaining regular meals.  (Id. ¶ 36.)  On May 19, 2017, Dr. Horowitz met with plaintiff

18   and conducted a medical assessment regarding a 602 appeal plaintiff filed regarding the

19   confiscation of his cane, and reconfirmed that there was no objective evidence demonstrating that

20   plaintiff required a mobility device or mobility vest.  (Id. ¶¶ 39-40.)  Dr. Horowitz further noted

21   that correctional officers had observed plaintiff going up and down stairs, sitting calmly, watching

22   movies, and walking without any assistive devices.  (Id. ¶ 39.)

23          On July 14, 2017, plaintiff was seen by Dr. Bal in response to his complaint that he felt

24   pain as a result of his hernia.  (Id. ¶ 41.)  Dr. Bal concluded that a cane would be beneficial and

25   issued instructions that plaintiff be provided with a cane.  (Id. ¶¶ 41-42.)  Dr. Bal did not issue

26   any notes or instructions regarding a mobility vest.  (Id. ¶ 49.)  During that meeting, plaintiff

27   claimed that he had not fallen, but had *almost* fallen multiple times.  (Id. ¶ 46.)

28           Plaintiff then had a visit with Smith on the same day, and in light of Dr. Bal's findings,

1    Smith issued an order providing plaintiff with a cane on a temporary basis.  (Id. ¶¶ 43, 48.)

2    Additionally, despite Dr. Bal's findings, Smith also issued an order providing a mobility vest to

3    plaintiff on a temporary basis.  (Id. ¶ 50.)  In a follow up meeting on July 17, 2017, plaintiff

4    alleged to have fallen due to not having a cane, and alleged to have missed meals due to not

5    having a cane.  (Id. ¶¶ 44-45.)  Smith found no evidence of any malnutrition.  (Id. ¶ 45.)

6              B.  Access to a Walker, Hand-Restraint Devices, and Surgery

7              During a May 19, 2017 visit with Dr. Horowitz, plaintiff stated that he had a painful

8    hernia since April 3, 2017, which was before the date when plaintiff's cane and mobility vest was

9    allegedly confiscated.  (Id. ¶ 52.)  Plaintiff was diagnosed with an inguinal hernia, and treatment

10   to repair the hernia required surgery.  (Id. ¶ 51.)  There has been no medical determination

11   regarding the cause of the hernia or any claim that the failure to possess a mobility device caused

12   or exacerbated the hernia.  (Id. ¶¶ 53-54.)

13             Plaintiff has a cardiac condition that created a medical risk in proceeding with surgery to

14   treat his hernia, and accordingly, the surgeon on plaintiff's case recommended plaintiff obtain

15   clearance from a cardiologist before proceeding with surgery.  (Id. ¶¶ 55-56.)  Prior to surgery,

16   plaintiff needed to undergo a Lexiscan stress test with satisfactory results.  (Id. ¶ 58.)  On multiple

17   occasions, plaintiff refused to go to his cardiologist appointments and provided reasons such as

18   wanting to avoid handcuffs, wanting to avoid the outside weather, and not wanting to be in chains

19   all day.  (Id. ¶ 62.)  On November 22, 2017, plaintiff refused to attend his cardiology appointment

20   and signed a refusal form stating that he understood the risks and benefits of refusing to attend the

21   appointment.  (Id. ¶ 63.)  On January 11, 2018, Smith evaluated plaintiff and assessed that

22   standard hand-restraints would not foreseeably exacerbate plaintiff's medical condition, and

23   discomfort in the wrists is not a disability necessitating reasonable accommodation.  (Id. ¶¶ 66-

24   67.)

25             Physicians may issue medical notes indicating that an inmate has a disability and note

26   when a reasonable accommodation to the default hand-restraint devices are warranted.  (Id. ¶ 60.)

27   Ultimately, custody staff determine how to reasonably accommodate inmates.  (Id.)  Smith, as a

28   physician, did not have authority over hand restraints during transports, and that decision was left

8

1    to custody staff.  (Id. ¶ 59.)

2       During the January 11, 2018 visit, plaintiff requested a walker.  (Id. ¶ 69.)  Smith noted

3    plaintiff's prior evaluations and conducted a medical evaluation concluding that a walker was not

4    medically necessary.  (Id. ¶¶ 69-70.)

5       C.    <u>Administrative Appeals Regarding Plaintiff's Allegation that Smith Failed to Place an</u>

6          <u>Order for Surgery</u>

7       Since August 1, 2008, health care appeals and grievances regarding inmate medical care

8    issues have been processed by the California Correctional Health Care Services (CCHCS).  (Id. ¶

9    76.)  Inmates may grieve complaints regarding health care policies, decisions, actions, conditions,

10    or omissions using a CDCR 602 HC form.  (Id. ¶ 80.)  These complaints are subject to two levels

11    of review: an institutional level of review, and a headquarters level of review.  (Id. ¶ 81.)  Health

12    care grievances are subject to a headquarters' disposition prior to administrative remedies are

13    deemed exhausted.  (Id. ¶ 82.)

14       Between January 11, 2018 and the date on which plaintiff filed his First Amended

15    Complaint, plaintiff submitted two inmate appeals that resulted in a headquarters level decision.

16    (Id. ¶ 83.)  Plaintiff submitted health care grievance log number MCSP HC 18001085, which was

17    received at the institutional level on February 20, 2018, and grieved that the application of the

18    black-box handcuffs during transport were inadequate and requested a handcuff accommodation.

19    (Id. ¶ 84.)  This grievance was denied by the headquarters level on July 27, 2018.  (Id.)  Plaintiff

20    submitted health care grievance log number MCSP HC 18001033, which was received at the

21    institutional level on January 24, 2018, and grieved that Smith denied plaintiff's request for a

22    temporary walker.  (Id. ¶ 85.)  This grievance was ultimately denied by the headquarters level on

23    July 27, 2018.  (Id.)

24       Plaintiff filed a health care grievance log number MCSP HC 18003003, in which plaintiff

25    stated that Smith failed to place an order for surgery.  (Id. ¶ 88.)  This grievance was not

26    exhausted until May 29, 2019.  (Id. ¶ 89.)

27    /////

28    /////

1    V.    Discussion

2    A. Deliberate Indifference Standard

3         In order to state a §1983 claim for violation of the Eighth Amendment based on

4    inadequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence

5    deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

6    To prevail, plaintiff must show both that his medical needs were objectively serious, and that

7    defendant possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298-99

8    (1991); McKinney v. Anderson, 959 F.2d 853, 854 (9th Cir. 1992). The requisite state of mind

9    for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 5 (1992).

10        "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in

11   further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v.

12   Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other

13   grounds WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). Examples of a

14   serious medical need include "[t]he existence of an injury that a reasonable doctor or patient

15   would find important and worthy of comment or treatment; the presence of a medical condition

16   that significantly affects an individual's daily activities; or the existence of chronic and

17   substantial pain." Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir.

18   1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989)).

19        In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very

20   demanding standard for "deliberate indifference." "While poor medical treatment will at a certain

21   point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does

22   not suffice." Wood, 900 F.2d at 1334. Even civil recklessness (failure to act in the face of an

23   unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to

24   establish an Eighth Amendment violation. Farmer, 511 U.S. at 837 & n.5. It is not enough that a

25   reasonable person would have known of the risk or that a defendant should have known of the

26   risk. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Rather, deliberate indifference is

27   established only where the defendant subjectively "knows of and disregards an excessive risk to

28   inmate health and safety." Id. (citation and internal quotation marks omitted). Deliberate

10

1   indifference can be established "by showing (a) a purposeful act or failure to respond to a

2   prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner,

3   439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

4       A difference of opinion between an inmate and prison medical personnel—or between

5   medical professionals—regarding appropriate medical diagnosis and treatment are not enough to

6   establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989);

7   Toguchi, 391 F.3d at 1058.  To establish a difference of opinion rises to the level of deliberate

8   indifference, plaintiff "must show that the course of treatment the doctors chose was medically

9   unacceptable under the circumstances."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

10      B.  Smith's Decisions Concerning Access to Cane and Mobility Device

11      Despite plaintiff's assertion that a genuine issue of material fact exists as to whether Smith

12   was deliberately indifferent to his serious medical needs, plaintiff, at most, has raised a difference

13   of medical opinion regarding his medical treatment, and a "difference of opinion does not amount

14   to a deliberate inference to [plaintiff's] serious medical needs."  Sanchez, 891 F.2d at 242.

15   Plaintiff's evidence in opposition to Smith's motion fails to create a genuine dispute of material

16   fact as to whether Smith was deliberately indifferent to plaintiff's medical need.[2]

17      Based on evidence submitted by plaintiff and Smith, it is clear that plaintiff had several

18   doctors treating him.  Plaintiff argues that Smith did not provide him a cane and mobility vest and

19   was therefore deliberately indifferent to plaintiff's needs.  (ECF Nos. 24, 66.)  The undisputed

20   facts and evidence show that by the time Smith met with plaintiff, a separate physician, Dr.

21   Vaughn had already discontinued plaintiff's cane and mobility vest.  (DSUF ¶ 26.)  Both Dr.

22   Vaughn and Dr. Horowitz similarly found that plaintiff did not have any physical disabilities

23   warranting a cane and/or mobility vest.  (Id. ¶¶ 12, 15.)  Moreover, the evidence shows that Smith

24   did not confiscate any mobility device from plaintiff.  Nothing in the evidence indicates that

25   _____

26   [2] Additionally, plaintiff is not a qualified medical expert able to provide competent testimony
     regarding the sufficiency of a medical examination.  See Fed. R. Evid. 702; Daubert v. Merrell

27   Dow Pharm., Inc., 509 U.S. 579 (1993).  Accordingly, any statements by plaintiff that Smith's
     examinations were inadequate are insufficient to dispute evidence submitted by Smith

28   demonstrating that plaintiff's grievances amount to at most a difference of opinion regarding
     plaintiff's medical care.

1    Smith's treatment of plaintiff with regard to accessing a cane and/or mobility vest rises to the

2    level of a constitutional violation.  Plaintiff has not submitted evidence creating a genuine dispute

3    of material fact.  Accordingly, the court recommends that Smith's motion on this claim be

4    granted.

5            C.  Smith's Decision Regarding Plaintiff's Request for a Walker and Alternative Handcuffs

6            Plaintiff argues that Smith's decision to deny plaintiff the use of a walker amounted to a

7    constitutional violation.  (ECF No. 24 at 4.)  On January 11, 2018, plaintiff requested Smith

8    provide him with a walker.  (DSUF ¶ 69.)  Prior to this visit, plaintiff was evaluated multiple

9    times by different physicians, each coming to the same conclusion that a mobility device was not

10   medically necessary.  Plaintiff has not provided any evidence creating any genuine dispute of

11   material fact that Smith's decision was "in conscious disregard of an excessive risk to plaintiff's

12   health," Jackson, 90 F. 3d at 332.  Rather, it is clear from the submitted evidence that Smith's

13   decision was based on a review of medical records, evaluations, and plaintiff's physical

14   condition.

15           Additionally, any decision by Smith determining that alternative handcuffs were not

16   medically necessary similarly did not raise to the level of a constitutional violation.  First,

17   plaintiff does not provide any evidence disputing that Smith had no control over what types of

18   hand-restraints devices are provided to inmates.  Second, plaintiff's assertion that an

19   accommodation for alternative handcuffs was medically necessary is a difference of opinion, and

20   plaintiff cannot establish that Smith's decision was otherwise "medically unacceptable under the

21   circumstances."  Jackson, 90 F. 3d at 332.

22           Accordingly, the court finds that plaintiff has not created a genuine dispute of material

23   fact as to whether Smith was deliberately indifferent when refusing plaintiff's request for both a

24   walker and an accommodation for alternative handcuffs.

25           D.  Whether Smith Caused Undue Delays to Proceed with Hernia Surgery

26           Plaintiff alleges that Smith failed to place an order for surgery which was an oversight.

27   (ECF No. 24 at 4.)  The evidence shows that due to plaintiff's cardiac condition, plaintiff's

28   surgeon recommended plaintiff undergo a Lexiscan stress test before being cleared for surgery.

12

1   (DSUF ¶ 58.)  Nothing in the evidence suggests that once plaintiff was cleared for surgery, Smith

2   personally failed to issue an order for plaintiff to have surgery.  Based on the undisputed

3   evidence, plaintiff refused to attend several appointments and himself delayed his clearance for

4   the surgery.  Accordingly, plaintiff has not established a genuine dispute of material evidence as

5   to whether Smith delayed his surgery or failed to place an order for surgery when he was

6   medically cleared for surgery.

7        E.   Exhaustion Standard

8        The Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with

9   respect to prison conditions under section 1983 of this title, . . . until such administrative remedies

10   as are available are exhausted."  42 U.S.C. § 1997e(a).  A prisoner must exhaust his

11   administrative remedies before he commences suit.  McKinney v. Carey, 311 F.3d 1198, 1199–

12   1201 (9th Cir. 2002).  Compliance with this requirement is not achieved by satisfying the

13   exhaustion requirement during the course of a civil action.  See McKinney, 311 F.3d 1198 (9th

14   Cir. 2002).  Failure to comply with the PLRA's exhaustion requirement is an affirmative defense

15   that must be raised and proved by the defendant.  Jones v. Bock, 549 U.S. 199, 216 (2007).  In the

16   Ninth Circuit, a defendant may raise the issue of administrative exhaustion in either (1) a motion

17   to dismiss pursuant to Rule 12(b)(6), in the rare event the failure to exhaust is clear on the face of

18   the complaint, or (2) a motion for summary judgment.  Albino v. Baca, 747 F.3d 1162, 1169 (9th

19   Cir. 2014) (en banc).  An untimely or otherwise procedurally defective appeal will not satisfy the

20   exhaustion requirement.  Woodford v. Ngo, 548 U.S. 81, 84 (2006).

21        In order to defeat a properly supported motion for summary judgment based on a

22   prisoner's failure to exhaust pursuant to 42 U.S.C. § 1997e(a), plaintiff must "come forward with

23   some evidence showing" that he has either (1) properly exhausted his administrative remedies

24   before filing suit or (2) "there is something in his particular case that made the existing and

25   generally available remedies unavailable to him by 'showing that the local remedies were

26   ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'"  Williams v.

27   Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Hilao v. Estate of Marcos, 103 F.3d 767,

28   778 n.5) (9th Cir. 1996)); Jones, 549 U.S. at 218.  "Accordingly, an inmate is required to exhaust

13

1    those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the

2    action complained of.'"  Ross v. Blake, 136 S. Ct. 1850, 1859 (2016) (quoting Booth v. Churner,

3    532 U.S. 731, 738 (2001)).  If undisputed evidence viewed in the light most favorable to the

4    prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56 of

5    the Federal Rules of Civil Procedure.  Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).  If

6    there is at least a genuine issue of material fact as to whether the administrative remedies were

7    properly exhausted, the motion for summary judgment must be denied.  See Fed. R. Civ P. 56(a).

8         When the district court concludes that the prisoner has not exhausted administrative

9    remedies on a claim, "the proper remedy is dismissal of the claim without prejudice."  Wyatt v.

10   Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by

11   Albino, 747 F.3d at 1168-69.

12         F.   Whether Plaintiff Exhausted the Allegation that Smith Failed to Order Hernia Surgery

13         Additionally, the sole administrative grievance concerning whether Smith failed to order

14   hernia surgery was log number MCSP HC 18003003, which was received at the institutional level

15   on November 27, 2018, and decided on January 29, 2018.  (DSUF ¶¶ 87-88.)  Plaintiff submitted

16   this for a headquarters level review on March 7, 2019, and a final decision was issued on May 29,

17   2019.  Plaintiff filed his First Amended Complaint on January 4, 2019.  (ECF No. 24.)

18         42 U.S.C. § 1997(e)(a) is clear that administrative remedies must be fully exhausted prior

19   to bringing an action.  McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).  Because this

20   particular claim was not fully exhausted, the undersigned will recommend dismissal.

21        G.   Qualified Immunity

22         Because the court finds no violation of plaintiff's Eighth Amendment rights, it need not

23         address Smith's argument that he is entitled to qualified immunity

24      VI.   Plain Language Summary for Pro Se Litigant

25         The undersigned is recommending that Smith's motion for summary judgment be granted

26   and that all claims be dismissed.  The reason for this is because you have not provided any

27   evidence that Smith was deliberately indifferent to your medical needs.  A difference in medical

28   opinion does not amount to a constitutional violation.  Additionally, the undersigned is

1   recommending an additional reason for dismissing your claim that Smith failed to place an order

2   for surgery because this claim was not fully exhausted at the time you filed your First Amended

3   Complaint.

4        Accordingly, **IT IS HEREBY RECOMMENDED** that:

5        1.  Defendant's motion for summary judgment (ECF No. 59) be granted and claims

6   against defendant Smith be dismissed.

7        2.  Judgment be entered for defendant.

8        These findings and recommendations are submitted to the United States District Judge

9   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within fourteen days**

10  **after being served with these findings and recommendations, any party may file written**

11  **objections with the court and serve a copy on all parties.**  Such a document should be

12  captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Any response to**

13  **the objections shall be served and filed within seven days after service of the objections.**

14  **Due to exigencies in the court's calendar, there will be no extensions of time granted.**  The

15  parties are advised that failure to file objections within the specified time may waive the right to

16  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17  Dated:  September 4, 2020

18                                      _____
                                        CAROLYN K. DELANEY
19                                      UNITED STATES MAGISTRATE JUDGE

20

21  18:pala2500.msj.f&r.cjra

22

23

24

25

26

27

28

15